# Harber *v.* Pennsylvania Railroad Company, Appellant (No. 1).

*Waters—Damages by flood—Act of God—Evidence—Case for jury—Railroads.*

1. An act of Providence as related to cases of injurious negligence, is one against which ordinary skill and foresight is not expected to provide. Whether a particular injury is attributable to such a cause, or is the consequence of negligence is ordinarily a question of fact.

2. In an action against a railroad company for the flooding of land alleged to have been caused by insufficient pipes under a fill, where the defendant alleges that the injuries were due to an extraordinary flood, and the evidence on the subject is conflicting, it is proper for the trial judge to submit the case to the jury with the instruction that if the flood was extraordinary, one such as could not reasonably have been anticipated as likely to occur in the particular stream, the defendant could not be held for the loss, unless it was in part the result of the negligence of the defendant arising out of its failure to maintain an outlet for the stream adequate to allow the flow of water likely to exist during ordinary floods, regard being had to the extent of the watershed, and the precipitateness of the hillsides.

3. In such a case the plaintiff may also show that the outlet was not only insufficient in size, but so constructed in the location of the two pipes that the two currents created in close proximity, caused drift of various kinds to lodge in the space between the pipes and thereby greatly increased the accumulation of drift, with the result that the mouths of the pipes were clogged and closed.

4. The plaintiff may show the relative capacity of an old culvert under the fill, when there was a single track, and the capacity of the new tracks under the fill when the pipes were doubled. Such evidence is competent for the purpose of showing knowledge or opportunity of knowledge by the defendant of the requirements as to the size of the culvert.

5. A mere averment in the plaintiff's statement that the defendant had maintained a sufficient culvert which had been removed at the time when the two pipes were placed, is not material to the right of recovery, and does not preclude the plaintiff from showing that a larger but inadequate provision existed before the iron pipes were used.

Argued Oct. 29, 1913. Appeal, No. 75, Oct. T., 1913, by defendant, from judgment of C. P. Clearfield Co., May T., 1912, No. 376, on verdict for plaintiff in case of A. J. Harber v. Pennsylvania Railroad Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Trespass to recover damages for injuries to land. Before A. O. SMITH, P. J.

At the trial it appeared that the injuries to plaintiff's land for which suit was brought occurred by reason of floods in the Lille Blain Run on September 8, September 15, and October 1, 1911. The defendant claimed that the floods were extraordinary. The evidence showed that at the time of these floods there were two iron pipes under the defendant's fill which had been laid at the time the road was double tracked. Prior to that time there had been a culvert under the single track.

A witness for plaintiff was asked this question:

"Q. Prior to the time the double track was put in did you ever know the water coming over the railroad?"

Mr. Murray: We object to this as incompetent, ir-

relevant and immaterial.   Also because it is not covered by the pleadings in the case.

The Court: Objection overruled, evidence admitted, exception noted for defendant and bill sealed. [16]

"A. I remember once there was a stump came down the time the culvert was in and it came over the road. There was a stump got clogged in the culvert."

Defendant presented these points:

1. Under the pleadings and evidence in the case there can be no recovery and the verdict must be for defendant. *Answer:* Refused. [1]

2. The overwhelming and admitted testimony being that at least this first flood of September 8, 1911, was of such an unusual and extraordinary character as could not hold the defendant liable for any damage sustained thereby. *Answer:* Refused. [2]

3. The proof being that the actual and substantial damage was done by this first flood of September 8, 1911, and there was no damage done by either the flood of September 15 or October 1, 1911, or if there was any damage it is not susceptible of such a substantial and certain nature from which the jury can base a recovery and the verdict must be for the defendant. *Answer:* Refused. [3]

4. The extraordinary and unusual character of the flood of September 8, 1911, carried with it such a vast accumulation of debris, rock, boni, cinders, logs, buildings, outbuildings and other debris which lodged in and along the channel of this stream both above and below the culvert of the railroad that made it neither practical nor possible for either the channel of the stream or the culvert under the railroad tracks to carry off the waters of the floods of September 15 and October 1, 1911, and there can be no recovery and the verdict must be for the defendant. *Answer:* Refused. [4]

5. If the jury find from the evidence that these floods of September 8, 15 and October 1, 1911, were of an unusual and extraordinary nature and so caused both by

62    HARBER *v.* PENNA. R. R. CO., Appellant (NO. 1).

Statement of Facts—Opinion of the Court.    [56 Pa. Superior Ct.

the volume and intensity of the water and the vast and excessive amount of cinder, rock, boni, wood, logs, buildings, outbuildings and other debris in and along the channel of the stream, then the inadequacy and insufficiency of the drain could not have been such a cause for the damage here claimed for and the verdict must be for the defendant. *Answer:* Refused. [5]

Verdict and judgment for plaintiff for $830. Defendant appealed.

*Errors assigned* among others were (1–5) above instructions, quoting them, and (16) ruling on evidence, quoting the bill of exceptions.

*Hazard Alex. Murray,* with him *Thomas H. Murray* and *James P. O'Laughlin,* for appellant.—If the facts are not disputed and the inference to be drawn from them is plain and not open to doubt by reasonable men it is the duty of the court to determine the question as a matter of law: Hoag v. Railroad Co., 85 Pa. 293; Haverly v. State Line, etc., R. R. Co., 135 Pa. 50; Potter v. Natural Gas Co., 183 Pa. 575; Gudfelder v. Railway Co., 207 Pa. 629.

*A. H. Woodward,* with him *Hugh B. Woodward,* for appellee.—Where an "Act of God" concurs with the negligence of defendant in producing the result, the defendant is liable: Livezey v. Phila., 64 Pa. 106; Balto. & Ohio R. R. Co. v. Sulphur Spring Independent School District, 96 Pa. 65; Bell v. McClintock, 9 Watts, 119; Helbling v. Cemetery Co., 201 Pa. 171; Siegfried v. South Bethlehem Boro., 27 Pa. Superior Ct. 456; Lehigh Bridge Co. v. Lehigh Coal & Navigation Co., 4 Rawle, 9.

OPINION BY HENDERSON, J., February 20, 1914:

It seems not to be disputed that the two pipes laid under the fill made by the defendant were insufficient to permit the passage of the water flowing in Little

Blain Run in the event of a heavy rain such as might ordinarily occur in that part of the country. In several instances shown by the evidence the embankment so obstructed the water of the stream that it was backed up and caused to flow over the tracks and onto the property of persons owning land on the lower side. Three such floods occurred within a month in the fall of 1911. The injury caused by them is the occasion of the pending action. That the plaintiff was subjected to a considerable loss because of the floods is conceded. The defense relied on. was that they were extraordinary and of so destructive a character that they could not reasonably have been foreseen and even if foreseen were so great that it would have been impracticable to have avoided or prevented the damage. Much of the evidence introduced in the case was directed to the inquiry whether the floods were of the magnitude alleged by the defendant. The plaintiff contended, and offered evidence to show, that the volume of water was such as might be expected after a heavy rain in that section of country and that within a few years at least seven floods of substantially the same height had occurred. The greatest injury was done on September 8, 1911, and it may be accepted as a fact that this flood was greater than those of September 15 and October 1 of the same year and probably greater than the floods of former years, but the testimony of some of the plaintiff's witnesses who had lived in the locality for many years was that these were the ordinary conditions following very heavy rains. Some of the witnesses for the defendant regarded the flood of September 8 as extraordinary and the highest ever observed by them in that stream. This evidence raised an issue of fact which the court submitted to the jury as the first question for determination, and this submission was accompanied by the instruction that if the flood was extraordinary, one such as could not reasonably have been anticipated as likely to occur in that stream, the

defendant could not be held for the loss sustained by the plaintiff unless that loss was in part the result of the negligence of the defendant arising out of its failure to construct and maintain an outlet for the stream under the fill adequate to allow the flow of water likely to exist during ordinary floods, regard being had to the extent of the watershed and the precipitateness of the hillsides. This was a proper subject for consideration by the jury under the evidence: Fick v. Penna. R. R. Co., 157 Pa. 622; Brown v. Ry. Co., 183 Pa. 38. The defendant in making or enlarging the fill was bound to take account of the size of the stream and the extent and character of the watershed in making provision for the flow of water. Anticipation must be had in such cases that floods will occur with their accompanying ice and drift and provision must be made accordingly. The defendant was not required to provide against what is extraordinary. An act of Providence as related to cases of injurious negligence is one against which ordinary skill and foresight is not expected to provide. Whether a particular injury is attributable to such a cause or is the consequence of negligence is ordinarily a question of fact. The court could not have declared that the floods in question were extraordinary without usurping the function of the jury. It was said in Pitts., Ft. Wayne & Chicago Ry. Co. v. Gilleland, 56 Pa. 445: "The frequent recurrence of what was supposed to be extraordinary was some evidence that the real character of all these floods had been mistaken by those who testified as to their extraordinary character and that they were really only ordinary freshets, though measuring up to the highest altitude of that class. It was proper, therefore, to submit this question to the jury with instruction, if they so found the fact, to apply the rule as to ordinary freshets."

The plaintiff did not rely wholly, however, on the evidence that the floods were of an ordinary character but contended and offered evidence to show that the outlet was not only insufficient in size but was so con-

structed in the location of the two pipes that the two currents created in close proximity caused drift of various kinds to lodge in the space between the pipes and thereby greatly increased the accumulation of drift with the result that the mouths of the pipes were clogged and closed. The effect of this necessarily would be to increase the volume of water flowing over the track and onto the plaintiff's property and this increase might be an important factor in producing the plaintiff's damage. If the negligence of the defendant concurred with an act of Providence in producing the injury the defendant would be liable: B. & O. R. R. Co. v. School District, 96 Pa. 65; Helbling v. Cemetery Co., 201 Pa. 171. The plaintiff's evidence showed that the pipes at times were so obstructed that their outflow was very much less than their capacity in times of flood and even in the case of an extraordinary flood the obstruction of the two pipes would probably add very materially to the destructive consequences of the flow of water over the track. Evidence was introduced to show that when the road was originally constructed a stone culvert was made to carry off the water of the run; that this was inadequate for the purpose and that about 1891 when a double track was laid on the fill this culvert was taken out and the two iron pipes each having a diameter of twenty-four inches were placed under the tracks. Objection was made to the testimony introduced to show the relative capacity of the old culvert and the new pipes, but we think it was competent for the purpose of showing knowledge or opportunity of knowledge by the defendant of the requirements as to the size of the culvert. If it had been demonstrated by the action of floods for a number of years that the stone culvert was not adequate, the act of the defendant's employes in putting in a less capacious culvert would lack justification. The averment of the plaintiff's statement that the defendant had maintained a sufficient culvert which had been removed at the time when the

iron pipes were placed was not a necessary part of the plaintiff's declaration nor material to the right of recovery. There was no necessity, therefore, that the plaintiff support that statement by evidence. He was not precluded thereby from showing that a larger but inadequate provision existed before the iron pipes were used. It may be remarked also that it is practically conceded that the pipes were insufficient to meet the requirements of an ordinary flood and the testimony was therefore not prejudicial to the defendant.

The jury could not have misunderstood the answers of the learned trial judge to the plaintiff's second and thirteenth points. They had reference to the injuries set forth in the declaration and which were the subject of consideration during the progress of the trial. The only damage which the plaintiff claimed was that resulting from the floods in September and October, 1911. Whatever the jury found to have been the plaintiff's loss by reason of any of these floods as disclosed by the testimony would be the basis of the verdict, and we must assume that the conclusion of the jury was limited and controlled by the testimony. We are not convinced that the court erred in any material way in the trial of the case.

The judgment is affirmed.